retirement income payable to a Member who has not yet retired on his required beginning date shall be the amount which would have been payable to him if he had actually retired on such date. Such monthly retirement income shall be adjusted once annually during the Member's continued employment as provided in Section 4.05. With respect to distributions under the Plan for calendar years beginning on or after January 1, 2001, the Plan will apply the minimum distribution requirements of Section 401(a)(9) of the Internal Revenue Code in accordance with regulations under Section 401(a)(9) that were proposed on January 17, 2001, notwithstanding any provision of the Plan to the contrary. This amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Section 401(a)(9) or such other date as may be specified in guidance published by the Internal Revenue Service.

## ARTICLE VII - DEATH BENEFITS

7.01. <u>Death During Employment</u>. If a Member who has not retired or terminated employment shall die before attainment of his Normal Retirement Date, and if the Surviving Spouse Benefit provided for in Article V is not in effect, there shall be paid to his Beneficiary a death benefit with respect to his Basic Retirement Income if he is vested therein prior to his death and with respect to his Supplemental Retirement Income Benefit (which shall be 100% vested upon his death). The portion of the death benefit attributable to the Member's Basic Retirement Income shall be payable as a life annuity with or without periods certain as selected by the Beneficiary, in the amount provided by the greatest of (a), (b), or (c):

(a) If the Member is eligible on the date of his death for a vested deferred retirement benefit at Normal Retirement Date, the Actuarial Equivalent of his vested deferred retirement benefit at the time of his death.

(b) If the Member is eligible for early retirement at the time of his death, 60% of the Actuarial Equivalent value of the amount of his early retirement income attributable to his Basic Retirement Income at the time of his death.

(c) The amount of the actuarial reserve established as of December 31, 1975 for such Member's retirement benefit in accordance with the provisions of Section 10.04 as in effect on that date.

The portion of the death benefit attributable to the Member's Supplemental Retirement Income shall be payable in a lump sum pursuant to Option 6 of Section 6.02

7.02. <u>Death During Disability</u>. If a Member who becomes permanently disabled (within the meaning of Section 8.05(a)) after having completed three (3) Years of Service (excluding any Years of Service which may be credited on account of a leave of absence granted for such disability) shall die during his disability, and if the Surviving Spouse Benefit provided

41

for in Article V is not in effect, his Beneficiary shall be entitled to a death benefit in an amount determined under Section 7.01 as though the Member had died on the date he became disabled except that in determining whether such Member was eligible for early retirement at the time of his death, such determination shall be made as of the actual date of his death in accordance with the provisions of Section 8.05.

7.03. <u>Death After Termination</u>. If a vested Member who has no surviving spouse terminates employment and thereafter dies before his Annuity Starting Date with respect to his vested Supplemental Retirement Income, there shall be paid to his Beneficiary a lump sum death benefit equal to the amount which could have been paid to the Member under Option 6 of Section 6.02 immediately before his death.

7.04. <u>Payment of Death Benefit</u>. The first payment in annuity form under Section 7.01 or 7.02 shall be due as of the first day of the first calendar month following the date of the Member's death. In the event that the Beneficiary shall die during a period certain, the commuted Actuarial Equivalent value of the remainder of such payments shall be paid to the executors or administrators of such Beneficiary. Any lump sum payment under Section 7.01, 7.02, or 7.03 shall be paid as soon as administratively feasible after the date of the Member's death.

7.05. <u>Designation of Beneficiary</u>. A Member may designate the Beneficiary to receive benefits payable upon his death. Such designation shall be in writing, shall comply with the spousal consent requirements of Section 5.02 and may be changed at any time by a writing filed with the Committee. In the event that there shall be no valid Beneficiary designation in effect at the Member's death or if the Beneficiary shall have pre-deceased the Member, the Committee in its sole discretion shall direct payment of the benefits to one or more of the Member's family or

to his executors or administrators. If a Beneficiary who may become entitled to receive payments on the death of a Member under the Normal Form provided by this Plan dies before said Member dies, whether before or after said Member's retirement, the Member may designate another Beneficiary.

7.06. <u>Restriction on Payments After Death</u>. If payments are to be made under this Plan upon the death of a Member to his surviving spouse or Beneficiary, the benefits payable to such surviving spouse or Beneficiary after the death of the Member shall be distributed in an Actuarial Equivalent form such that all such payments will be completed by December 31 of the calendar year which contains the fifth (5th) anniversary of the Member's death; provided, however, that this requirement shall not apply (a) if payment has commenced prior to the death of the Member in accordance with the provisions of Article V or Article VI above, in which event distribution shall continue for the period remaining under said form of payment and shall be at least as rapidly as that in effect as of the Member's death, or (b) if payment will be made for the life of the surviving spouse or Beneficiary or for a period not extending beyond the lives or the life expectancy of the surviving spouse or Beneficiary and beginning no later than December 31 of the calendar year following the calendar year in which the Member dies, or if the surviving spouse is the Beneficiary, beginning no later than December 31 of the calendar year in which the Member would have attained age 70½, if later. Notwithstanding the foregoing, the restrictions of this Section 7.06 shall not apply to the surviving spouse or Beneficiary of any Member who, prior to January 1, 1984, elected in writing payment in a specific form to commence at a specific time provided that such election was permitted by the terms of the Plan and Section 401(a)(9) of the Code in effect at such time and provided, further, that such election is not revoked prior to commencement of benefits thereunder.

43

## ARTICLE VIII - TERMINATION OF EMPLOYMENT AND DISABILITY

8.01. <u>Rights on Termination Prior to Retirement or Death</u>. If a Member shall terminate his employment with the Company other than by death or retirement in accordance with this Plan, his rights under the Plan shall be as set forth in this Article VIII.

8.02. <u>Approved Absences Not Termination</u>. A Member absent from the employ of the Company on an approved leave of absence or other approved absence as described in Section 3.04, shall not be considered to have terminated his employment for purposes of this Article VIII.

8.03. <u>Vested Benefit</u>. A Member who ceases to be in the employ of the Company prior to his Normal Retirement Date for a reason other than death and disability shall be entitled to his vested accrued benefit (if any) under the Plan as follows:

    (a) A Member shall become fully vested in his accrued Basic Retirement Income upon completion of five (5) Years of Service.

    (b) A Member shall vest in his accrued Supplemental Retirement Income as follows: 25% vesting after the completion of two (2) Years of Service and an additional 25% vesting for each subsequent completed Year of Service, so that upon the completion of five (5) Years of Service he shall be 100% vested in his accrued Supplemental Retirement Income.

Any Member who is not vested in either a Basic Retirement Income benefit or a Supplemental Retirement Income benefit under the Plan shall be deemed to have received the vested portion of his total retirement income benefit on the date of his termination of employment. Any Years of Service which a Member or a former Member earns with Capital Growth Management Limited Partnership, a Massachusetts partnership, shall also be recognized as Years of Service for vesting purpose under this Plan. Upon his termination of employment,

44

the vested Member shall be entitled to a retirement income benefit in the Normal Form commencing at his Normal Retirement Date (if he shall be living on such date) and computed as of his date of termination of employment in an amount equal to the accrued retirement income as of the date of such termination as determined upon Section 4.02. The Member's accrued normal retirement income at termination of employment shall be equal to the sum of (i) the Basic Retirement Income under Section 4.02(a) (in the Normal Form) on the Member's Normal Retirement Date determined as if the Member had continued in employment to that date but using his Base Pension Compensation and Covered Compensation determined at termination of employment, and multiplied by the ratio of the number of his actual Years of Credited Service to the number of Years of Credited Service he would have had if he had continued in employment to his Normal Retirement Date, plus (ii) his accrued Supplemental Retirement Income under Section 4.02(b).

8.04. **Minimum Benefits Under Prior Plan.** Notwithstanding anything to the contrary in this Article VIII, if any Member who was a Member on December 31, 1967 terminates his employment prior to Normal or Early Retirement Date, but at such time and under such circumstances that he would meet the requirements for early retirement or disability retirement under the terms of the Plan as in effect December 31, 1967, he shall be entitled to retirement benefits as computed and payable in accordance with the provisions of the Plan as in effect December 31, 1967 if such amount is greater than the Basic Retirement Income benefits otherwise provided for him under the foregoing provisions of this Article VIII or Article IV, if applicable.

45

8.05. Disability.

(a) If the Company shall determine that a Member's employment with the Company has terminated because of permanent disability, as hereinafter defined, then notwithstanding the provisions of Section 8.03, such Member's accrued normal retirement income shall be fully vested regardless of the number of his Years of Service. The term "permanent disability" means any medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a period of at least two (2) years and that renders the individual unable to engage in any occupation for which he is qualified by training, education or experience.

(b) If the Company shall determine that a Member's employment with the Company has terminated because of a disability, as defined in paragraph (c) of this Section, and if such Member shall have completed three (3) Years of Service (excluding for this purpose any Years of Service credited on account of any leave of absence granted in connection with such disability) prior to such termination of employment, then solely for purposes of determining a Member's accrued normal retirement income attributable to his Basic Retirement Income and his vesting service applicable thereto such Member shall be credited during the period of such disability after termination of employment with additional Years of Credited Service and Years of Service for purposes of Sections 4.02, 4.03 and 8.03 for a period equal to the lesser of (i) the number of his Years of Service (excluding for this purpose any Years of Service credited on account of any leave of absence granted in connection with such disability) completed prior to such termination of employment, or (ii) five (5) years; provided, however, that such Member shall in no event be credited with more Years of Credited Service and Years of Service

46

than he would have been credited with had he continued in active employment until his Normal Retirement Date. Upon completion of the applicable period of disability following termination of employment up to five (5) years as provided in the foregoing sentence, such Member shall not be credited with further Years of Credited Service and Years of Service for purposes of Sections 4.02, 4.03 or 8.03 during his continued disability. Thereafter during his disability, he shall become entitled to receive benefits at his Early or Normal Retirement Date in accordance with the provisions of this Plan, subject to the limitations contained in paragraph (e) of this Section; and in the event of his death, the amount of his death benefit will be determined in accordance with provisions of Section 7.02 or Article V.

(c)  An Employee shall be considered to be disabled for the purpose of paragraph (b) of this Section 8.05 if he has a medically determinable physical or mental impairment which renders him unable to perform the duties assigned to him by the Company or, in case such disability has continued for a period of two (2) years, renders him thereafter unable to engage in any occupation for which he is qualified by training, education or experience.

(d)  If the disability of a Member shall cease and he shall again become an Employee, the Company shall resume benefit accruals on his behalf in accordance with the terms of the Plan, except that in determining Years of Service for purposes of qualification for early retirement under Section 4.03 with respect to his Basic Retirement Income or vesting in his Basic Retirement Income under Section 8.03(a) and in determining Years of Credited Service for purposes of computing his Basic Retirement Income retirement benefits under Section 4.02(a), any years of absence on account of

disability following the applicable period of disability for which credit is given under paragraph (b) of this Section 8.05 shall not be counted.

(e) Solely for purposes of his entitlement to the payment of Basic Retirement Income benefits hereunder, a disabled Member shall be deemed not to have retired or otherwise terminated his employment with the Company as long as he is receiving benefits under the Company's long-term disability program.

(f) All determinations of disability under this Section 8.05 shall be made by the Company on the basis of such medical evidence, including the opinion of one or more physicians satisfactory to the Company, as the Company may reasonably require. The Company's determination as to whether a Member has become permanently disabled within the meaning of paragraph (a) and/or disabled within the meaning of paragraph (c) of this Section 8.05 and as to whether his termination of employment was on account of such disability shall be conclusive upon all persons, provided that in the event that a Member has submitted his resignation or received a notice of dismissal and thereafter incurs a disability prior to termination, such termination shall not be deemed to be on account of such disability.

8.06.  Early Commencement of Vested Benefit. A Member who terminates employment prior to age 55 but who has completed at least ten (10) Years of Service when his employment terminates may elect to receive his vested Basic Retirement Income benefit in an Actuarial Equivalent amount, commencing on the first day of any month following his 55th birthday. The Committee shall prescribe the method by which and the time within which such election shall be made in accordance with applicable governmental regulations. A Member may elect, at such times and pursuant to such procedure established by the Committee, to receive his

48

vested Supplemental Retirement Income benefit in an Actuarial Equivalent amount at any time after his termination of employment and before his Normal Retirement Date

8.07. <u>No Death Benefit</u>. If a Member dies following termination of employment and prior to his Annuity Starting Date, except as provided in Section 5.06, Section 7.02, and Section 7.03, no benefit shall become payable in his behalf under this Plan.

8.08. <u>Reemployment of Terminated or Retired Members</u>. In the event that any terminated or retired Member is reemployed by the Company after retirement income payments have been made or commenced, all benefit payments hereunder shall be suspended; provided, however, effective January 1, 1993, that in the event a terminated or retired Member is reemployed by the Company after his Normal Retirement Date, benefit payments shall not be suspended if such Member is employed on a part-time basis. The Committee shall provide such written notice to such Member as is required by applicable law and regulations.

Upon subsequent retirement, such Member's Basic Retirement Income benefit shall be recomputed in accordance with Section 4.02(a), based on all his Years of Credited Service and Years of Service, and shall be offset by the Actuarial Equivalent of any Basic Retirement Income benefits previously paid to such Member either prior to his Normal Retirement Date or in the form of a lump sum payment.

Upon subsequent retirement, such Member's Supplemental Retirement Income shall be recomputed in accordance with Section 4.02(b), based on all his Years of Credited Service, and shall be offset by the Actuarial Equivalent of any Supplemental Retirement Income benefits previously paid to the Member prior to Normal Retirement Date.

## ARTICLE IX - CONTRIBUTIONS TO THE TRUST

9.01. <u>Contributions of the Company</u>. All contributions to provide benefits under the Plan shall be made by the Company and no Member shall make contributions. Subject to the provisions of this Agreement, the Company intends to make contributions to the Trust from time to time in amounts sufficient to insure the successful operation of this Plan on a sound actuarial basis based on periodic actuarial computations and in amounts at least equal to the amounts necessary to meet the minimum funding standards of ERISA. A Member who terminates his employment prior to his Normal Retirement Age shall, on his date of termination, forfeit his Basic Retirement Income benefit and/or his Supplemental Retirement Income benefit if he is 0% vested in such benefits. A Member who is partially vested in his Supplemental Retirement Income benefit shall forfeit the non-vested portion of such benefit upon his fifth (5th) consecutive One-Year Break in Service or upon complete distribution of his vested Supplemental Retirement Income benefit, if earlier. All forfeitures shall be used to reduce Company contributions under the Plan.

9.02. <u>Establishment of Trust Fund</u>. All the funds of the Plan shall be held by a Trustee or Trustees appointed from time to time by the Company, in one or more trusts (such trusts being herein collectively referred to as the Trust), under a trust instrument or instruments approved or authorized by the Company for use in providing the benefits of the Plan and paying any reasonable expenses and providing necessary services in administration of the Plan; provided, however, that the Company, or any committee specifically authorized by the Company, may in its discretion, also enter into any type of contract with any insurance company or companies selected by it for providing benefits under the Plan.

9.03. <u>Company Not Liable For Benefits</u>. Subject to the provisions of ERISA, the Company shall have no liability with respect to the payment of benefits or with respect to the

administration of the Trust, and each Member, Beneficiary and spouse shall look solely to the Trust for any payments or benefits under the Plan.

9.04. <u>Trust Fund Held Exclusively to Provide Benefits</u>. All assets held by the Trustee under the Plan shall be held in trust for the exclusive benefit of Members, spouses of Members and Beneficiaries under the Plan, and, subject to Article XIII, no part of the corpus or income shall revert to the Company or be used for, or diverted to, purposes other than for the exclusive benefit of Members, spouses of Members, Beneficiaries and other persons who are or may become entitled to benefits under the Plan, or for the payment of administration expenses or taxes upon the Trust as therein provided. Neither this Section 9.04 nor any provision of the Trust shall preclude the reversion of certain Company contributions pursuant to Section 9.05 of the Plan. No Member, spouse of a Member or Beneficiary under the Plan, nor any other person, shall have any interest in or right to any part of the investment earnings of the Trust, or any rights in, to or under the Trust or any part of its assets, except to the extent expressly provided in the Plan.

9.05. <u>Reversion of Certain Contributions</u>. All contributions by the Company hereunder shall be made upon the condition that such contributions are fully deductible for Federal income tax purposes. In the event that any such deduction is disallowed in whole or in part, then the Company may direct the Trustee to return such contribution (to the extent disallowed) to the Company at any time within the twelve-month period commencing on the date of disallowance. In the event that the Company shall make a contribution hereunder on the basis of a mistake of fact, the Company may direct the Trustee to return such contribution to the Company at any time within the twelve-month period commencing on the date of contribution.

## ARTICLE X - ADMINISTRATION OF THE PLAN

10.01. <u>Appointment of Pension Committee</u>. The Board of Directors shall appoint a Committee consisting of officers or other Employees of the Company or any other individuals to be known as the "Pension Committee" (hereinafter referred to as the "Committee"), who shall serve at the pleasure of the Board of Directors. The number of members of the Committee shall be not less than three (3) nor more than five (5), as designated by the Board of Directors. Vacancies in the Committee arising by resignation, death, removal or otherwise shall be filled by the Board of Directors. The Trustee shall accept and rely upon a certification by the Board of Directors as to the number and identity of the individuals comprising the Committee from time to time.

10.02. <u>Administrator; Powers of Committee</u>. The Company shall be the Administrator of the Plan as that term is used in ERISA. In its capacity as Plan Administrator, the Company shall act through the Committee. The Committee is authorized to establish such rules, regulations and forms as it may deem necessary to carry out the provisions of the Plan. The Committee may employ or use the services of such counsel, accountants, actuaries and such clerical personnel as may be required in carrying out the provisions of the Plan. The Committee shall have the discretionary power and authority to administer the Plan and its actions shall be conclusive and binding on all persons. In addition, the Committee shall have the discretionary power and authority to determine any questions (including questions of fact) arising in the administration, interpretation and application of the Plan, which determination shall be conclusive and binding on all persons.

10.03. <u>Action By Committee</u>. The Committee shall act by a majority of its members at the time in office and such action may be taken either by vote at a meeting or in writing without a meeting. The Committee may by such majority action authorize any person or persons to

execute any written instructions or other document on behalf of the Committee, in which event the Committee shall notify the Trustee in writing of such action and the name of any person or persons so designated. The Trustee thereafter shall accept and rely upon any document executed by any such person or persons as representing action by the Committee until the Committee shall file with the Trustee a written revocation of such designation.

10.04. <u>Adoption of Actuarial Tables and Assumptions</u>. In administering the Plan, the Committee shall adopt from time to time actuarial tables to be used as the basis for all actuarial calculations, and shall recommend the rates of contribution payable by the Company in accordance with this Plan to the Trust as provided in Article IX. The Committee shall determine from time to time the per centum rate of interest, to be used as the basis for all actuarial calculations. As an aid to the Committee in adopting tables and in recommending the rate of contribution payable by the Company to the Trust, the actuary appointed by the Committee shall make annual actuarial valuations of the assets and liabilities of the Plan and shall certify to the Committee the tables and rates of contribution which he would recommend for use by the Committee.

10.05. <u>Reliance on Actuary</u>. In administering the Plan, the members of the Committee and the officers and Directors of the Company shall be entitled to rely upon all tables, valuations, certificates, and reports furnished by any actuary employed by the Committee and upon all opinions given by legal counsel. The members of the Committee and the officers and Directors of the Company shall be fully protected with respect to any action taken in good faith in reliance upon any such tables, valuations, certificates, reports or opinions. All actions so taken shall be conclusive upon each of them and upon all persons having any interest under the Plan.

10.06. <u>Committee Records</u>. In administering the Plan, the Committee shall keep accurate records and minutes of its proceedings and actions. It shall also maintain or cause to be maintained accounts showing the fiscal transactions of the Plan and shall keep in convenient form such data as may be necessary for the actuarial valuation of the assets and liabilities of the Plan. The Committee shall prepare annually a report to the Board of Directors showing in reasonable detail the assets and liabilities of the Plan and a brief account of the operation of the Plan for the preceding year.

10.07. <u>Committee to Direct Payments</u>. In administering the Plan, the Committee shall direct the Trustee concerning all payments which are to be made out of the Trust funds pursuant to this Agreement.

10.08. <u>Submission of Proof of Age</u>. In administering the Plan, the Committee shall require each Member, Beneficiary and spouse of each Member to submit to it in such form as it shall deem reasonable, adequate and acceptable proof of his age or date of birth.

10.09. <u>Compensation; Expenses; Indemnification</u>. Unless otherwise determined by the Board of Directors, the members of the Committee shall serve without compensation for services as such. The expenses of administering the Plan, including the compensation and expenses of the Trustee and the Committee, the compensation of the actuaries and any counsel or other persons employed by the Committee in the administration of the Plan, may be paid by the Company and unless or until so paid, shall constitute a charge upon the Trust. The Company shall indemnify and hold harmless each member of the Committee from any and all claims, loss, damages, expenses (including counsel fees approved by the Committee), and liability (including any amounts paid in settlement with the Committee's approval), arising from any act or omission

of such member, except when the same is judicially determined to be due to the willful misconduct of such member.

10.10. Discretionary Action. Wherever under the provisions of the Plan the Committee is given any discretionary power or powers, such power or powers shall not be exercised in such manner as to cause any discrimination in favor of or against any Employee or class of Employees. Any discretionary action taken by the Committee hereunder shall be consistent with any prior discretionary action taken by it under similar circumstances; and to this end the Committee shall keep a record of all discretionary action taken by it under any provision hereof.

10.11. Claims Procedure. In accordance with Section 503 of ERISA and the regulations of the Secretary of Labor prescribed thereunder

(a) All claims for benefits or for determination of the qualified status of a domestic relations order under this Plan shall be filed in writing with the Committee in accordance with such procedures as the Committee shall reasonably establish.

(b) In administering the Plan, the Committee shall, within 90 days of submission of a claim, provide adequate notice in writing to any claimant whose claim for benefits under the Plan has been denied. Such notice shall contain the specific reason or reasons for the denial and references to specific Plan provisions on which the denial is based. It will also provide the claimant with a description of any material or information which is necessary in order for the claimant to perfect his claim and an explanation of why such information is necessary. If special circumstances require an extension of time for processing the claim, the Committee shall furnish the claimant a written notice of such extension prior to the expiration of the 90 day period. The extension notice shall

indicate the reasons for the extension and the expected date for a final decision, which date shall not be more than 180 days from the initial claim.

(c) The Committee shall, upon written request by a claimant within 60 days of receipt of the notice that his claim has been denied, afford a reasonable opportunity to such claimant for a full and fair review by the Committee of the decision denying the claim. The Committee will afford the claimant an opportunity to review pertinent documents and submit issues and comments in writing. The claimant shall have the right to be represented.

(d) In administering the Plan, the Committee shall, within 60 days of receipt of a request for a review, render a written decision on its review. If special circumstances require extra time for the Committee to review its decision, the Committee will attempt to make its decision as soon as practicable, and in no event will the Committee take more than 120 days to send the claimant a written notice of its decision.

(e) In no event may a claim for benefits be filed by a claimant more than 120 days after the applicable "Notice Date," as defined in (i) through (iv) below.

(i) In any case where benefits are paid to the claimant as a lump sum, the Notice Date shall be the date of payment of the lump sum.

(ii) In any case where benefits are paid to the claimant in the form of an annuity, the Notice Date shall be the date of payment of the first installment of the annuity.

(iii) In any case where the Committee (prior to the filing of a claim for benefits under this Article X) determines that an individual is not entitled to benefits from the Plan and the Committee provides written notice to

such individual of its determination, the Notice Date shall be the date of the individual's receipt of such notice.

(iv) In any case where the Committee provides an individual, in connection with a distributable event under the Plan, a written statement of his or her vested Accrued Benefit and/or the respective values of the forms of benefit available as of a specific date, the Notice Date shall be the latest date of the Participant's receipt of such notice.

(f) In no event may any legal proceeding regarding entitlement to benefits or any aspect of benefits under the Plan be commenced later than the earliest of (i) two (2) years after the applicable Notice Date; or (ii) one (1) year after the date a claimant receives a decision from the Committee regarding his appeal, or (iii) the latest date otherwise prescribed by applicable law.

# ARTICLE XI - AMENDMENTS TO PLAN, TERMINATION, AND DISCONTINUANCE OR SUSPENSION OF CONTRIBUTIONS

11.01. <u>Amendment By Board of Directors</u>. The Company reserves the right at any time or times, by action of its Board of Directors to amend the Plan in whole or in part by delivery to the Committee and to the Trustee of a certified copy of the resolutions of said Board, making such amendment, provided, however, that no such amendment shall deprive any retired Member, spouse of a Member or other Beneficiary under the Plan of any retirement income to which he is then entitled. No amendment shall be made which would cause or permit any portion of the Trust to revert to or become the property of the Company, or be used for, or diverted to, purposes other than for the exclusive benefit of Employees and their Beneficiaries, prior to the satisfaction of all liabilities with respect to Members, spouses of Members and other Beneficiaries under the Plan; nor shall the duties or liabilities of the Trustee be increased without its written consent.

11.02. <u>Termination of Plan or Suspension of Contributions</u>. Although it is the expectation of the Company that it will continue the Plan as a permanent retirement program for the benefit of its Employees, the continuance of the Plan and making of contributions is not assumed by the Company as a contractual obligation. The Company reserves the right at any time, by action of its Board of Directors to terminate the Plan or to discontinue or suspend its contributions under the Plan for such period as said Board shall determine; provided that the effective date of the termination of the Plan shall not occur earlier than ten (10) days after the giving of notice of termination to the Pension Benefit Guaranty Corporation in accordance with Section 4041(a) of ERISA.

11.03. <u>Benefits Nonforfeitable on Termination</u>. In the event of a termination of the Plan or a partial termination of the Plan within the meaning of the regulations of the Secretary of the

Treasury, the rights of all affected Members to benefits accrued to the date of such termination or partial termination, to the extent funded, shall become nonforfeitable.

11.04. <u>Allocation of Assets on Termination</u>. In the event of the termination of the Plan, the assets of the Trust shall be allocated and applied to provide benefits in the following order of priority:

FIRST: Assets shall be allocated to provide retirement benefits to Members, spouses of Members and Beneficiaries which were in pay status as of the beginning of the three-year period ending on the Plan termination date or which would have been in such status as of the beginning of such period had the Member retired prior to the beginning of such period. The benefits payable under this subdivision FIRST shall be the smallest amount of benefit payable to the recipient during such three-year period (or the smallest amount of benefit which would have been payable during said period had the recipient retired at the beginning of such period) as determined under the provisions of the Plan in effect during the sixty-month period ending on the Plan termination date.

SECOND: Assets shall be allocated to provide for all Guaranteed Benefits not provided for in the allocation under the FIRST subdivision. For this purpose the term "Guaranteed Benefit" means the benefits of which payment is guaranteed by the Pension Benefit Guaranty Corporation computed as of the date of termination of the Plan in accordance with the provisions of Section 4022(b) of ERISA and the Regulations issued thereunder. Subject to the terms and conditions of said Section 4022(b)