UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                                    )
PHILIP R. MURRAY,                   )
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )
LOOMIS SAYLES & COMPANY, INC.,      )        Civil Action No. 04-12171 NMG
LOOMIS SAYLES & COMPANY, LP,        )
LOOMIS SAYLES & COMPANY, LP         )
PENSION COMMITTEE, LOOMIS-SAYLES    )
FUNDED PENSION PLAN, and KEVIN P.   )
CHARLESTON,                         )
                                    )
            Defendants.             )
                                    )
```

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Defendants Loomis Sayles & Company, Inc. ("Loomis Inc."), Loomis Sayles &

Company, LP ("Loomis LP" or the "Company"), Loomis Sayles & Company, LP Pension

Committee (the "Pension Committee"), Loomis-Sayles Funded Pension Plan (the "Pension

Plan"), and Kevin P. Charleston ("Mr. Charleston") (collectively, the "Defendants") hereby

submit this Memorandum of Law in support of their Motion to Dismiss the Complaint.

In his Complaint, Plaintiff Phillip R. Murray advances three legal claims:

1.      As to Defendants Loomis Inc., Loomis LP, the Pension Committee and the

Pension Plan, Plaintiff maintains in Count I that the Defendants breached their fiduciary duty to

him by failing to disclose that Loomis LP was planning to implement a retirement incentive

package, and by misrepresenting the status of such forthcoming incentive package, in violation

of Section 404 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§ 1104.

2.     As to Defendants Loomis Inc., Loomis LP, the Pension Committee and the Pension Plan, Plaintiff maintains in Count II that the Defendants unlawfully discriminated against him by interfering with his attainment of enhanced pension rights, in violation of Section 510 of ERISA, 29 U.S.C. § 1140.

3.     As to all Defendants, Plaintiff asserts in Count III a claim for common law misrepresentation, based on alleged misstatements by the Defendants concerning the future availability of a retirement incentive package.

For the reasons which follow, the Complaint should be dismissed in its entirety.  First and foremost, Plaintiff's claims are barred by well settled principles of res judicata.  In addition, the Complaint should be dismissed for the independently sufficient reason that it fails to state a claim upon which relief can be granted.

## BACKGROUND

On or about February 14, 2003, this Court (Lindsay, J.) dismissed Plaintiff's original Complaint in this matter (the "Original Complaint"), which named Loomis LP and Kevin Charleston as the sole defendants.  The Original Complaint, a true copy of which is appended hereto as **Exhibit A**, asserted common law claims for fraud and misrepresentation in connection with the Company's roll-out of retirement incentive enhancements to its pension plan.  The Defendants moved to dismiss, on the grounds that Plaintiff's state law causes of action were preempted by ERISA, and thus failed to state a claim upon which relief could be granted (the "Original Action").  The Court allowed the Defendants' motion.  (A copy of the Court's February 14, 2003 Order is appended hereto as **Exhibit B**.)  In its Order, however, the Court afforded Plaintiff the opportunity to file an amended complaint to assert federal claims under ERISA.  (See Exhibit B.)  Accordingly, on or about February 27, 2003, Plaintiff filed his First

Amended Complaint and Demand for Jury Trial (the "Amended Complaint"), again naming

Loomis LP and Mr. Charleston as the sole defendants (the "Amended Action"). The Amended

Complaint was identical to the Original Complaint in every detail, save a lone reference to

ERISA. (A true copy of the Amended Complaint is appended hereto as **Exhibit C**.) On or about

April 17, 2003, this Court dismissed the Amended Action in its entirety, and with prejudice,

allowing the Defendants' Motion to Dismiss for Failure to State a Claim. (A true copy of the

Court's April 17, 2003 Judgment of Dismissal is appended hereto as **Exhibit D**.)

On or about October 13, 2004, Plaintiff filed his Complaint in the case at bar. The

central facts supporting the claims in this Complaint – viz., alleged misstatements by Mr.

Charleston, Loomis LP's Chief Financial Officer, concerning the future availability of a

retirement incentive plan – are exactly the same facts supporting the claims advanced in both the

Original Action and the Amended Action. (Compare the Original Complaint, attached hereto as

**Exhibit A**, the Amended Complaint, attached hereto as **Exhibit C**, and the pending Complaint.)

There is only one difference between the present case and its two predecessors. This Complaint,

in addition to Loomis LP and Kevin Charleston (the "Original Defendants"), names three

Loomis affiliates – Loomis Inc., the Pension Committee, and the Pension Plan (the "New

Defendants"). In all other respects, the lawsuits are factually and legally indistinguishable.

## PLAINTIFF'S FACTUAL ALLEGATIONS[1]

Loomis LP employed Plaintiff from September 1, 1985 through July 5, 2002, when

Plaintiff voluntarily resigned his position as the Company's Treasurer to take a job with another

employer. (Compl. ¶¶ 6, 20.) Plaintiff claims that, before leaving Loomis LP, he inquired about

---

[1] The Defendants accept the Plaintiff's factual allegations as true for purposes of the present motion only. See State Street Bank & Trust Co. v. Denman Tire Corp., 240 F.3d 83, 87 (1st Cir. 2001). In point of fact, the Defendants categorically deny the substance of much of Plaintiff's pleading in this case.

whether the Company would be offering a retirement incentive package to supplement its pension plan. (Compl. ¶ 15.) More specifically, Plaintiff alleges that, on or about May 29, 2002, he informed Kevin Charleston that he was considering another job offer, and that his decision as to whether and when to accept such an offer depended on whether the Company would be offering employees a retirement incentive package. (Compl. ¶ 16.) Plaintiff alleges that Mr. Charleston responded that a retirement incentive plan was being explored, and that he would keep Plaintiff informed of its status and do everything possible to make sure Plaintiff would qualify for such a benefit were one offered. (Compl. ¶ 17.) Mr. Charleston additionally advised Plaintiff that he would not be able to apply accumulated vacation time in order to extend his qualifying employment with Loomis LP (for purposes of enhanced benefit eligibility) beyond his actual separation from the Company. (Compl. ¶ 18.)

Plaintiff claims that, in reliance on the representations of Mr. Charleston (alleged to have been repeated periodically throughout the month of June) to the effect that no retirement incentive benefit was yet being implemented, he accepted an offer of employment with another company and resigned from Loomis LP as of July 5, 2002. (Compl. ¶¶ 19-20.) Plaintiff further alleges that Loomis LP subsequently offered an early retirement incentive to employees with a qualification date of July 15, 2002, and that the Company allowed at least one employee to use accumulated vacation time to extend his creditable employment beyond that date in order to qualify for the package. (Compl. ¶¶ 25-27.) According to Plaintiff, had he been informed that the enhanced retirement plan would be offered, or that he could use accrued vacation to extend his employment, he would have remained employed at the Company through the qualification date and thus been eligible for the benefit. (Compl. ¶¶ 29-30.)

Plaintiff's Complaint posits that the Defendants' statements concerning a retirement incentive package (and the use of accrued vacation to satisfy the service requirements therefor) were false, and that, as a result of the Defendants' misrepresentations, Plaintiff was induced to leave his employment with Loomis LP before qualifying for the enhanced benefit. (Compl. ¶¶ 20, 28-30.) It is further alleged that, in reliance on those representations, Plaintiff chose neither to delay his resignation nor exhaust his accrued vacation time, and thus failed to qualify for a retirement benefit he would otherwise have been due under the Company's amended plan. (Compl. ¶¶ 20, 29-30.)

The Loomis-Sayles Funded Pension Plan is an ERISA-governed retirement benefit plan, administered by a designated Pension Committee. (See Exhibit 1 to the Complaint, at Sections 10.01 and 10.02.) The Plan contains explicit provisions pursuant to which a participant may make a claim for benefits or challenge a denial of same. (Id. at Section 10.11.) Plaintiff did not exhaust his administrative remedies in a timely manner, having failed to file a claim for benefits with the Pension Committee until June 30, 2004 (well beyond the 120-day limitations period prescribed by the Plan.) (See Exhibit 3 to the Complaint.)

## ARGUMENT

## I.    THE COMPLAINT IS BARRED BY PRINCIPLES OF RES JUDICATA.

Plaintiff's Complaint must be dismissed in its entirety, because the claims asserted therein are barred by settled principles of res judicata. It is well-established law that "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." Apparel Art Inter'l, Inc. v. Amertex Enters. Ltd., 8 F.3d 576, 583 (1st Cir. 1995); see also Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994); Aunyx Corp. v. Canon, U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. 1992), cert. denied, 507 U.S. 973 (1993); Pastercyzk v. Fair, 819 F.2d 12, 13 (1st Cir. 1987). As this Court

has noted, the doctrine of res judicata is premised on "considerations of economy of judicial time and public policy favoring the establishment of certainty," see Connaughton v. New England Tel. & Tel., 1988 WL 34321 at *2 (D. Mass. 1988), and is designed "to force the plaintiff to bring all of his causes of action against a defendant in one proceeding if those claims all stem from a common fact pattern." Id. (citing Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 597 (1947)).

The First Circuit has articulated a three-prong test to determine whether principles of res judicata bar the relitigation of issues in a second action that were or could have been raised in a prior one. See Apparel, 8 F.3d at 583; Aunyx, 978 F.2d at 6. Res judicata will bar the succeeding action if (1) there was a final judgment in the prior litigation; (2) if the causes of action in the prior litigation and the subsequent litigation are "sufficiently identical;" and (3) if the parties in the prior litigation and the subsequent litigation are "sufficiently identical." Id. There is no dispute that the first prong of this test is met in the present case, as this Court has entered final judgment on the merits in not one but two prior civil actions filed by Plaintiff. Specifically, this Court dismissed both Plaintiff's Original Action and his Amended Action. See Exhibit B, Exhibit D.[2] Final judgment having thus been established, it remains for this Court to determine if there is sufficient identity between the prior parties and claims to bar the current action.

Regarding the second prong of the test for res judicata, the First Circuit has adopted a "transactional approach" to determine if the cause of action asserted in the two litigations is

---

[2] Plaintiff's Original Action and Amended Action were dismissed on Rule 12(b)(6) motions. It is well settled that dismissal pursuant to a dispositive motion is the "product of full litigation and careful decision," and therefore constitutes dismissal "on the merits" for purposes of res judicata. See Betances v. Quiros, 603 F. Supp. 201, 206 (D.P.R. 1985); Connaughton, 1998 WL 34321 at *2-3.

sufficiently identical. See Apparel, 8 F.3d at 583; Aunyx, 978 F.2d at 6. "Under this approach, a cause of action is defined as a set of facts which can be characterized as a single transaction or a series of related transactions. The cause of action, therefore, is a transaction that is identified by a common nucleus of operative facts. Although a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action." Apparel, 8 F.3d at 583-84 (emphasis added).

In the case at bar, Plaintiff seeks (for a third time) to relitigate and obtain relief for wrongs he claims to have suffered as a result of alleged misrepresentations made by the Defendants concerning the future availability of a retirement incentive plan. (Compl. ¶¶ 16-20.) The facts underlying the claims asserted in the present case are based on the identical "nucleus of operative facts" that formed the basis for the claims advanced in the Original Action and Amended Action – viz., alleged misrepresentations concerning the future availability of a retirement incentive plan. (Compl. ¶¶ 16-20; Orig. Comp. ¶¶ 5-10 (Exh. A); Amend. Compl. ¶¶ 6-11 (Exh. C).) For this reason, the causes of action in the case at bar and those pleaded in the Original Action and Amended Action are one and the same, and the second prong of the First Circuit's res judicata test is met. See Connaughton, 1988 WL 34321 at *3 (barring second action on principles of res judicata where plaintiff sought "relief for the same wrongs for which he sued in his first case," and where the operative facts in the first and second cases were identical); see also Pastercyzk, 819 F.2d at 14 (dismissing action on res judicata grounds where the facts in both cases were identical, the relief sought in both cases was for the same wrong, and where the "legal claim in both actions grew out of the same transaction") (internal quotation marks omitted); Manego v. Orleans Board of Trade, 773 F.2d 1, 6-7 (1st Cir. 1985), cert. denied, 475 U.S. 1084

(1986) ("[T]he focus of the 'transactional' analysis is not whether a second claim <u>could</u> have been brought in a prior suit, but whether the <u>underlying facts of both transactions were the same or substantially similar</u> .... [Where] the factual basis for each claim is essentially the same, so that not only <u>could</u> both claims be joined in one lawsuit, but <u>must</u> be joined or be barred by <u>res judicata</u>") (emphasis added); <u>Lubrizol Corp.</u> v. <u>Exxon Corp.</u>, 929 F.2d 960, 963 (3rd Cir. 1991) (holding that the causes of action in two litigations are the same where the "material facts alleged, and the witnesses and documentation required to prove the allegations are all the same").

In the present case, Plaintiff relies on new statutory theories to seek recovery for the same fundamental wrongs he alleged in the Original Action and Amended Action.[3]  Advancing new legal theories for the same alleged transactional wrongs, however, does not change the fact that the fundamental causes of action asserted in this case are the same as the causes of action asserted in the Original Action and the Amended Action.  Such a device of pleading will not, therefore, alter the preclusive effect of the prior judgments.  See <u>Connaughton</u>, 1988 WL 34321 at *3 ("a mere change in a proffered legal theory does not alter the preclusive effect of a prior judgment where the underlying facts are the same") (citing <u>Carparo</u> v. <u>Tilcon Gammino, Inc.</u>, 751 F.2d 56, 57 (1st Cir. 1985) ("We agree that the instant action presents a different claim from that on which the earlier litigation was based.  Nonetheless, the litigation of that claim is foreclosed because it deals with one of the same series of transactions as was presented in the

---

[3] In the Original Action, as a result of alleged misrepresentations concerning an impending retirement incentive plan, Plaintiff sought to recover for common law misrepresentation.  (<u>See</u> <u>generally</u> Orig. Compl. (Exh. A).)  In the Amended Action, again as a result of alleged misrepresentations concerning the retirement incentive plan, Plaintiff sought to recover benefits under Section 502(a)(1)(B) of ERISA.  (<u>See</u> Amend. Compl., at ¶ 5 (Exh. C).)  In the case at bar, once again as a result of alleged misrepresentations concerning the retirement incentive plan, Plaintiff seeks to recover for breach of fiduciary duty under ERISA, interference with the attainment of rights under ERISA, and common-law misrepresentation.  (Compl. ¶¶ 37, 40, 43.)  The claims in all three lawsuits plainly source to the same purported wrongdoing by the Defendants.

earlier litigation by these plaintiffs"); Prizio v. City of Revere, 629 F. Supp. 538, 539-40 (D.

Mass. 1986) ("a plaintiff may not 'split' his claim and later attempt to relitigate issues that 'were

or could have been dealt with in an earlier litigation' .... claim preclusion applies to claims that

could have been brought as well as those actually asserted. For purposes of res judicata a second

claim is not a new claim simply because the plaintiff applies a new legal theory to the same

facts") (citations omitted).[4]

The third prong of the test to determine the applicability of the res judicata bar requires

that the parties in the prior and subsequent litigation be "sufficiently identical." Apparel, 8 F.3d

at 583. It is beyond dispute that this third prong of the res judicata test is met with respect to the

Plaintiff, Loomis LP and Kevin Charleston, all of whom were parties to the prior actions. Philip

R. Murray, the sole plaintiff in this case, was likewise the sole plaintiff in both the Original

Action and the Amended Action (Orig. Compl. ¶ 1 (Exh. A); Amend. Compl. ¶ 1 (Exh. C).) And

Loomis LP and Kevin Charleston, who are named in the present case, were also named

defendants in both the Original Action and the Amended Action. (Orig. Compl. ¶¶ 2-3 (Exh. A);

Amend. Compl. ¶¶ 2, 3 (Exh. C).)

---

[4] Like the First Circuit, other federal courts have held that a judgment on the merits in a prior action will bar subsequent claims which allege the same facts but rest on different legal theories. See In re Teltronics Servs., Inc., 762 F.2d 185, 193 (2nd Cir. 1985) ("New legal theories do not amount to a new cause of action so as to defeat the application of the principles of res judicata"); Lubrizol, 929 F.2d at 963 (additional legal theory of reformation will not defeat preclusion when acts complained of, material facts alleged, and witnesses and documentation required to prove allegations are the same as in prior action); Goldberg v. R.J. Longo Constr. Co. Inc., 54 F.3d 243, 246 (5th Cir. 1995) (action to foreclose mechanic's and materialman's lien precluded by prior action for breach of contract); Doe v. Allied-Signal, Inc., 985 F.2d 908, 913 (7th Cir. 1993) ("A plaintiff may not avoid an earlier judgment on the merits by merely concocting a new legal theory"); Inter'l Union of Operating Eng'rs, Etc. v. Karr, 994 F.2d 1426, 1430-31 (9th Cir. 1993) (union's claim for underpayment of contributions to pension fund precluded by prior action which sought to collect delinquent payments to fund); Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1503 (11th Cir. 1990) (action against bank premised on vicarious liability for actions of its directors precluded by judgment dismissing third party action against same directors for same acts).

The sole question in respect to the third prong, therefore, is whether the New Defendants (Loomis Inc., the Pension Committee and the Pension Plan), who were non-parties to both the Original Action and the Amended Action, are "sufficiently identical" to the named defendants in those lawsuits that they may rely for res judicata purposes on this Court's judgment on the merits in such prior actions to bar the pending claims against them. In this connection, the First Circuit has held that new defendants to a litigation can rely on a prior judgment on the merits to bar pending litigation against them by the same plaintiff if there is a "close and significant" relationship between the original defendants and the new defendants. See In re El San Juan Hotel Corp., 841 F.2d 6, 10 (1st Cir. 1988); see also Betances, 603 F. Supp. at 206-07; Mashpee Tribe v. Watt, 707 F.2d 23, 24 (1st Cir. 1983), cert. denied sub nom. Mashpee Tribe v. Clark, 464 U.S. 1020 (1983) (addition of new defendants in a second action does not alter res judicata effect of prior judgment).[5]

In El San Juan, the question before the Court was whether the "second of two lawsuits" filed on behalf of the same bankrupt estate by different plaintiffs was properly barred by the principles of res judicata. El San Jaun Hotel, 841 F.2d at 7. In the first case, the United States government brought an action against Hector Rodriquez-Estrada ("Rodriquez"), the former trustee of the estate. Id. at 7-8. In that case, the District Court found, among other things, that Rodriguez had breached his statutory duties to the estate. Id. at 8. In the second action, the

---

[5] See also Gambocz v. Yelencsics, 468 F.2d 837, 841 (3rd Cir. 1972) (holding that "res judicata may be invoked against a plaintiff who has previously asserted the same claim against different defendants where there is a close or significant relationship between successive defendants"); Official Publications, Inc. v. Kable News Co., Inc., 811 F. Supp. 143, 147 (S.D.N.Y. 1993) ("The doctrine of res judicata also bars litigation of the same causes of action against defendants who were known to plaintiff at the time the first action was filed but were not named where the newly-added defendants have a sufficiently close relationship with the original defendant"); McLaughlin v. Bradlee, 599 F. Supp. 839, 847-48 (D.C. Cir. 1984) (same); Avins v. Dixon, 610 F. Supp. 308 (E.D. Pa. 1984) (same).

plaintiff, Marshall Kagan, sued both Rodriquez and his attorney, Charles Cuprill-Hernandez ("Cuprill"). Id. at 8. The District Court, in dismissing Kagan's action against Rodriquez and Cuprill, held that Kagan's claims "[were] identical to those raised, heard, and adjudicated in the earlier lawsuit and therefore were barred by the doctrine of res judicata." Id. at 8. Kagan appealed, arguing that the action against Cuprill was not barred by res judicata because Cuprill had not been a party to the first litigation. Id. The Court of Appeals disagreed. The First Circuit held that the application of res judicata with respect to the claims asserted against Cuprill was appropriate because, as alleged in Kagan's complaint, Cuprill and Rodriguez were co-perpetrators of the harm suffered by the estate and, therefore, Cuprill shared a close and significant relationship with Rodriguez. Id. at 10-11. At the same time, the First Circuit held that, as a co-perpetrator of the harm alleged to have been caused to the estate, Cuprill "could have been, and should have been, included in [the first litigation] if he shared culpability for the wrongdoing alleged there." Id. at 11 (applying res judicata to bar claim asserted against previously unnamed defendant).

The First Circuit's holding in El San Juan is directly on point, and dictates a finding that the New Defendants – Loomis Inc., the Pension Committee and the Pension Plan – may rely on res judicata to bar the claims pending against them. The New Defendants without question have a close and significant relationship to the defendants in the Original Action and the Amended Action and, therefore, are "sufficiently identical" for res judicata purposes. As in El San Juan, and as Plaintiff himself asserts in his current Complaint, the New Defendants, in conjunction with the Original Defendants, caused the very harm alleged to have been suffered by Mr.

Murray. (Compl. ¶¶ 9, 22-23.)[6] If the New Defendants are, as Plaintiff alleges, co-perpetrators

of the harm he claims to have suffered, then Plaintiff should have included them as named

defendants in both the Original Action and Amended Action.  See Capraro, 751 F.2d at 57, 59

(allowing non-party defendant parent corporation to rely on principles of res judicata to bar

claims against it by same plaintiff in prior litigation because, "[i]nasmuch as the subsidiary is not

liable, because action against it is barred by the doctrine of res judicata, it follows that the parent

corporation is not to be held liable for what its subsidiary did at its direction"); Connaughton,

1988 WL 34321 at *4 (similar).[7]

    Additionally, the New Defendants can rely for res judicata purposes on this Court's

judgments in the prior actions, because they are sufficiently identical to Loomis LP, one of the

defendants in these prior actions.  First, Loomis Inc. is sufficiently identical to Loomis LP on

---

[6] It should be noted that Plaintiff himself implicitly acknowledges the close and significant relationship among the Defendants. First, Loomis Inc. is the general partner of Loomis LP. (Compl. ¶ 2.) Second, Loomis Inc. and Loomis LP are joint sponsors of the Pension Plan. (Compl. ¶¶ 4, 8.) Finally, Loomis Inc., Loomis LP, the Pension Committee and the Pension Plan necessarily have a close and significant relationship for purposes of the matters at issue in this case, because Loomis Inc. and Loomis LP acted through the Pension Committee in committing the ERISA violations alleged by Plaintiff. (Compl. ¶ 9.)

[7] It bears mention that Plaintiff should have named the Pension Committee and Pension Plan as defendants in the Original Action and Amended Action for the further reason that, in claims for ERISA benefits, "[t]he proper party defendant … is the party that controls administration of the plan." Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir. 1998) (citing Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997)); see also Rossi v. Boston Gas Co., 833 F. Supp. 62, 67 (D. Mass. 1993) (dismissing plaintiff's action challenging decision to recoup overpayment of retirement benefits through offset of monthly pension check, on grounds that pension plan and plan administrator, not former employer, were the only proper defendants); Reynolds v. Bethlehelm Steel Corp., 619 F. Supp. 919, 928 (D. Md. 1984) (holding that where retirement plan has an administrator, "the administrator is the proper party [to the litigation], not the employer, unless the employer has controlled or influenced the administrator's decisions in regard to awarding pension benefits"). Since the Pension Plan named in this case, which was also the plan at issue in both the Original Action and Amended Action, expressly appoints a committee – the Pension Committee – to administer the Plan, see Exhibit 1 to the Complaint at Sections 10.01 and 10.02, the Pension Committee and Pension Plan were indispensable parties under Fed. R. Civ. P. 19, and Plaintiff should have named them as defendants in the prior actions.

account of their common corporate affiliation -- Loomis Inc. is the General Partner of Loomis LP. (Compl. ¶ 2.) Second, Loomis LP is sufficiently identical, for res judicata purposes, to the Pension Plan and the Pension Committee, because it has a "close and significant relationship" with each of these two New Defendants. (1) Loomis LP is the sponsor of the Pension Plan, see generally Exhibit 1 to the Complaint; (2) Loomis LP is the Administrator of the Pension Plan, see Exhibit 1 to Complaint at Section 10.02; (3) the Board of Directors of Loomis LP appoints the Pension Committee, see id. at Section 10.01; and (4) Loomis LP, as the Administrator of the Pension Plan, acts through the Pension Committee. See id. at Section 10.02 ("In its capacity as Plan Administrator, the Company shall act through the Committee.").

Finally, it should be noted that no injustice will occur if Plaintiff's case is dismissed on res judicata grounds. Plaintiff has had ample opportunity to fully and fairly litigate all claims arising out of Defendants' alleged misstatements concerning the timing of incentives to be added to Loomis LP's Pension Plan. Indeed, Plaintiff has had not one, but two prior opportunities to litigate these claims. It is simply a waste of judicial resources to afford Plaintiff a third chance to press claims that have already been adjudicated on the merits. Moreover, permitting Plaintiff a third bite at the apple would undermine the fundamental policy rationale of res judicata which, as the First Circuit has stated, is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Apparel, 8 F.3d at 583 (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980).

For all the foregoing reasons, the case at bar should be dismissed in its entirety. It is barred as a matter of law by principles of res judicata.

II.    **COUNT I OF THE COMPLAINT SHOULD BE DISMISSED FOR THE INDEPENDENT REASON THAT IT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER ERISA.**

A.    **Plaintiff Cannot State A Section 502(a)(3) Claim For Breach Of Fiduciary Duty Premised On An Alleged Violation of Section 404 Of ERISA.**

In Count 1 of the Complaint, Plaintiff seeks monetary damages in the amount of $250,000 for, among other things, loss of benefits arising out of his reliance on the Defendants' alleged misstatements concerning the timing of incentives to be added to Loomis LP's retirement plan, all in violation of Section 404(a) of ERISA, 29 U.S.C. § 1104(a).[8]  (See Compl. ¶¶ 37-39.) Plaintiff thus does not seek equitable relief, but instead brings this action solely to recover money damages for himself.  (Id.)  Such a claim cannot lie under Section 502(a)(3) of ERISA.

Although Section 502(a)(3) allows for the assertion of claims on behalf of individual plan beneficiaries, such as the claim Plaintiff has advanced in Count I (see Compl. ¶ 37), it is well settled that such actions will only lie for equitable relief and that legal damages are not recoverable.  See Varity Corp. v. Howe, 516 U.S. 489 (1996).  In the case at bar, Plaintiff does not seek equitable relief as provided for in Section 502(a)(3), but rather seeks legal damages in an amount not less than $250,000.  (Compl. ¶ 38.)  Such monetary remedies are not recoverable under Section 502(a)(3) of ERISA.  See Great-West Life & Annuity Ins. v. Knudson, 534 U.S. 204, 210 (2002) (in holding that money damages, including restitution at law, are not available under ERISA Section 502(a)(3), the Court stated, "[a]lmost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the

---

[8] Section 404(a) of ERISA sets forth the standard of care that a fiduciary must exercise in discharging his duties and obligations with respect to an ERISA-governed plan.  See Section 404(a) of ERISA, 29 U.S.C. § 1104(a).  Claims for violations of Section 404(a) of ERISA are brought under Section 502(a)(3) of ERISA.  See Section 502(a)(3) of ERISA, 29 U.S.C. § 1104(a), 29 U.S.C. § 1132(a)(3).

plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from defendant's breach of legal duty") (citing Bowen v. Massachusetts, 487 U.S. 879, 918-19 (1988)); Sampson v. Rubin, Civ. A. No. 00-10215-DPW, 2002 WL 31432701 (D. Mass. Oct. 29, 2002) (rejecting plaintiff's claim for economic restitution under ERISA Section 502(a)(3) for alleged breach of fiduciary duty); Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196, 200 (1st Cir. 1997) (same); see also Mertens v. Hewitt Associates, 508 U.S. 248, 255 (1993) ("[m]oney damages are, of course, the classic form of legal relief"); Hein v. Fed. Deposit Ins. Corp., 88 F.3d 210, 224 (3rd Cir. 1996) (dismissing plaintiff's breach of fiduciary duty claim under Section 502(a)(3) of ERISA premised on alleged violation of Section 404, because "money damages under ERISA [Section] 502(a)(3) ... are legal damages not available ....").

In the case at bar, the relief sought by Plaintiff is for the monetary damages he sustained in reliance on the Defendants' purported misrepresentations. Plaintiff does not seek "other appropriate equitable relief" and, therefore, in accordance with the foregoing authorities, no fiduciary claim under ERISA Section 502(a)(3) is stated. Accordingly, the claim must be dismissed.

## B.    Plaintiff Does Not State A Section 409 Claim For Breach Of Fiduciary Duty Under Section 502(a)(2) Of ERISA.

While it is not clear from Plaintiff's Complaint, to the extent that Count I seeks to enforce through Section 502(a)(2) an individual claim for breach of fiduciary duty in violation of Section 409 of ERISA, such a claim for damages fails as a matter of law.[9] Once again, Plaintiff

---

[9] Section 409 of ERISA, which is enforced through Section 502(a)(2) of the statute, makes a fiduciary who breaches his responsibilities, obligations or duties under ERISA "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of such fiduciary which have been made through use of assets of the plan ...." Section 409 of ERISA, 29 U.S.C. § 1109.

has brought this action to recover money damages for himself rather than for the benefit of the

retirement plan.  (Compl. ¶¶ 37-39.)  Such a claim does not lie under Section 502(a)(2) of

ERISA.

Numerous courts have held that legal relief in favor of individual plan beneficiaries

cannot be awarded for claimed breaches of fiduciary duty under ERISA.  As explained by the

Second Circuit Court of Appeals:

> "Section 502(a)(2) of ERISA permits a participant or beneficiary to
> sue a 'fiduciary with respect to a plan' for breach of fiduciary duty
> in violation of ERISA Section 409.  The Supreme Court's decision
> in [Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134
> (1985)] clearly precludes any claim by the plaintiffs under Section
> 502(a)(2).  In Russell, a beneficiary of a plan sued the plan
> administrator for damages arising out of the administrator's delay
> in processing the plaintiff's claims.  The Supreme Court held that
> the fiduciary duties imposed by Section 409 run to a plan and not
> to individual beneficiaries.  473 U.S. at 140-44. . . . Russell
> therefore bars plaintiffs from suing under Section 502(a)(2)
> because plaintiffs are seeking damages on their own behalf, not on
> behalf of the Plan."

Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993) (emphasis added).  Accord Long v. Group

Long-Term Disability Benefits for Employees, 1999 U.S. Dist. LEXIS 18656, *20 (D. Mass.)

("an individual beneficiary of an employee benefit plan may not seek monetary damages on his

own behalf for an alleged breach of fiduciary duty"); Jackson v. Truck Drivers' Union Local 42

Health and Welfare Fund, 933 F. Supp. 1124, 1135 (D. Mass. 1996) (Section 502(a)(2) permits

plan participants to bring actions for breach of fiduciary duties, but "[s]uch actions can be

brought, however, only for relief for the plan itself rather than for beneficiaries individually")

(emphasis added); id. at 1136 (noting that the Supreme Court in Russell "held that a beneficiary

could not state a claim under ERISA §§ 409 and 502(a)(2) unless she alleged some harm to the

plan") (emphasis added).  See also Conley v. Pitney Bowes, 176 F.3d 1044, 1047 (8th Cir. 1999)

("[Section 409] provides relief only to a plan and not to individual beneficiaries … Mr. Conley

therefore does not have a cause of action for the restoration of. . .benefits under [Section 502(a)(2)] in conjunction with [Section 409]"), cert. denied, 528 U.S. 1136 (2000); Matassarin v. Lynch, 174 F.3d 549, 566 (5th Cir. 1999) ("[Plaintiff] has failed to allege any way in which the defendants' actions caused a loss to the Plan as a whole as envisioned in § 502(a)(2). We therefore affirm the district court's grant of summary judgment on [plaintiff's] § 502(a)(2) claim"), cert. denied, 528 U.S. 1116 (2000); Parker v. BankAmerica Corp., 50 F.3d 757, 768 (9th Cir. 1995) ("The former employees brought this action to recover severance benefits under the plan. It was not brought for the benefit of the plan. Thus, the district court did not err in granting BankAmerica's motion for summary judgment as to the former employees' [Section 502(a)(2) claim]"); see also Cinelli v. Security Pacific Corp., 61 F.3d 1437, 1445 (9th Cir. 1995) ("Individual beneficiaries may bring fiduciary actions against the plan fiduciaries, but they must do so for the benefit of the plan and not their individual benefit. . . . Cinelli's action is for benefits for himself and other individuals similarly situated, not for injury to the Plan. The district court's dismissal of the claim was proper."); Yager v. Carey, 910 F. Supp. 704, 729 (D.D.C. 1995) (rejecting monetary claim brought under Section 502(a)(2): "[a]s the Supreme Court has made clear, an individual beneficiary is not entitled to individual money damages"), aff'd, 159 F.3d 638 (D.C. Cir. 1998); White v. E&F Distributing Co. Empl. Pension Plan, 922 F. Supp. 132, 143 (C.D. Ill. 1996) ("A plan participant may not individually recover unpaid benefits under [Section 502(a)(2)]").

In the case at bar, the relief sought by Plaintiff is for the money damages he supposedly sustained in reliance on the Defendants' claimed misrepresentations. Plaintiff does not seek to redress harms to the retirement plan itself, and indeed seeks no equitable remedies of any kind.

As the foregoing authorities make clear, no fiduciary claim under ERISA Section 502(a)(2) will lie in these circumstances. The claim must, therefore, be dismissed.

**III.    COUNT II OF THE COMPLAINT SHOULD BE DISMISSED ON THE INDEPENDENT GROUND THAT PLAINTIFF'S VOLUNTARY RESIGNATION FROM EMPLOYMENT PRECLUDES AN INTERFERENCE CLAIM UNDER ERISA SECTION 510.**

Section 510 of ERISA makes it unlawful for any person:

> to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan
> . . . .

29 U.S.C. § 1140. "[T]he prohibitions [of this section] were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." West v. Butler, 621 F.2d 240, 245 (6th Cir. 1980); accord Vertago v. Piantedosi Baking Co., 1996 WL 208478, at * 3 (D. Mass. Apr. 3, 1996). To make out a prima facie claim of interference under Section 510, therefore, a plaintiff must show that the defendant (1) engaged in prohibited conduct, and (2) for the intended purpose of depriving him of rights to which he may become entitled under an ERISA plan. See Hammon v. DHL Airways, Inc., 165 F.3d 441, 451 (6th Cir. 1999).

The factual allegations set forth in the Complaint bar a claim for wrongful benefits interference under ERISA Section 510, because such allegations make clear that the Defendants never subjected Plaintiff to any action prohibited by the statute. See Woolsey v. Marion Labs, Inc., 934 F.2d 1452, 1461 (10th Cir. 1991) ("[A] fundamental prerequisite to a [Section 510] action is ... an allegation that the employer-employee relationship ... was changed in some discriminatory or wrongful way.") Rather, it was Plaintiff's own action — resigning his employment in order to accept a position with another employer (Compl. ¶¶ 6, 20) — that

rendered him ineligible for the enhanced retirement benefit subsequently offered by Loomis LP. Absent any factual basis for concluding that a resignation was other than voluntary, courts have routinely found that plaintiffs who quit their jobs cannot claim benefits interference under Section 510. See, e.g., Hammon, 165 F.3d at 452 (holding that plaintiff who resigned from employment without encouragement from his employer had not established a prima facie claim under Section 510 of ERISA); Woolsey, 934 F.2d at 1461 (finding no interference where plaintiff "admits that he voluntarily resigned from employment and [the defendants] denied his request for stock payment only after such termination"); Bogue v. Ampex Corp., 976 F.2d 1319, 1326-27 (9th Cir. 1992) (rejecting Section 510 claim because plaintiff offered no evidence that he was discharged from employment), cert. denied, 507 U.S. 1031 (1993); Caola v. Delta Air Lines, Inc., 35 F. Supp.2d 47, 53 (D. Mass. 1999) (finding employer's actions did not have purpose or effect of forcing employee to resign, and thus could not form basis of ERISA Section 510 claim); Colemen v. Mfs. Hanover Corp., Civ. A. No. 89-1249, 1990 WL 27370, at * 3-4 (E.D. Pa. Mar. 14, 1990) (holding plaintiff had no claim for benefits interference under ERISA Section 510, where plaintiff admitted that he resigned his employment and "no reasonable fact finder could find that plaintiff was constructively discharged from his position . . . .").

In the present case, the Complaint contains no suggestion that Plaintiff's resignation was the product of conditions "so difficult or unpleasant that a reasonable person in [his] shoes would have felt compelled to resign." Caola, 35 F. Supp.2d at 53 (rejecting ERISA Section 510 claim) (citing Alecea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977)). To the contrary, the fact that Plaintiff had another job lined up before he resigned, and then stayed on at the Company for a brief period in order to transition his responsibilities (Compl. ¶ 21), suggests that, far from being forced out, Plaintiff left Loomis for what he perceived to be greener pastures.

Accordingly, based on the facts as Plaintiff has alleged them, the Complaint fails to make out a

viable claim for relief under ERISA Section 510. Count II of the Complaint must, therefore, be

dismissed.

## IV.   COUNT III OF THE COMPLAINT SHOULD BE DISMISSED ON THE INDEPENDENT GROUND THAT PLAINTIFF'S STATE LAW MISREPRESENTATION CLAIM IS PREEMPTED BY ERISA.

Plaintiff's state law claim for misrepresentation, set forth in Count III of the Complaint,

states no viable cause of action. Such claim is federally preempted as a matter of law.

It is well settled that ERISA "comprehensively regulates employee pension and welfare

plans" such as the retirement plan at issue in this case. See Metropolitan Life Ins. Co. v.

Massachusetts, 471 U.S. 724, 732 (1985); see also 29 U.S.C. § 1002(2)(A) ("the terms

'employee pension benefits plan' and 'pension plan' mean any plan, fund, or program which . . .

is . . . established or maintained by an employer . . . to the extent . . . such plan, fund, or program

– (i) provides retirement income to employees, or (ii) results in a deferral of income by

employees for periods extending to the termination of covered employment or beyond . . . ."). In

this regard, Section 514 of ERISA expressly provides for the preemption of "any and all State

laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C.

§ 1144(a). Plaintiff's claim in the case at bar, therefore, is undeniably preempted.

On facts indistinguishable from those presented here, the First Circuit has held that a

claim for common law misrepresentation regarding a future retirement benefit is preempted by

ERISA. See Vartanian v. Monsanto Co., 14 F.3d 697 (1st Cir. 1994). In Vartanian, the plaintiff,

a 37-year employee of Monsanto, submitted a request for early retirement in March, 1990, one

year in advance of his expected retirement date of May 1, 1991, as required by the company's

pension plan. Id. at 698. In February, 1991, the plaintiff asked his supervisor about the truth of

rumors he had heard that Monsanto was going to offer a more favorable early retirement package

in the near future. Id. The plaintiff's supervisor responded that he could not confirm such

rumors, and that there were "no plans" regarding an enhanced early retirement benefit. Id. The

plaintiff checked back with his supervisor again in April, 1991, and received the same response.

Id. at 699. The plaintiff also made inquiry of a regional personnel manager, who likewise

confirmed that there were no plans for an upgraded early retirement offering. Id. The plaintiff

retired on May 1, 1991; and, contrary to the representations of its managers, Monsanto rolled out

an improved early retirement plan the following month. Id.

Addressing the plaintiff's common law misrepresentation claim, the First Circuit held

that the claim "related to" an employee benefit plan because it necessarily required proof of the

existence and economic value of such a plan. See Vartanian, 14 F.3d at 700 (applying Ingersoll-

Rand Co. v. McClendon, 498 U.S. 133 (1990)). Finding the existence of the early retirement

plan "inseparably connected to any determination of liability under the state common law of

misrepresentation," the Court upheld the dismissal of plaintiff's misrepresentation claim as

ERISA-preempted. Id. In the case at bar, as in Vartanian, Plaintiff alleges that the Defendants

intentionally deceived him with respect to the timing of the Company's offer of a retirement

incentive package. Thus, just as in Vartanian, Plaintiff's claim of common law

misrepresentation must be deemed preempted by ERISA.

Similarly, in Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 792 (1st Cir. 1995), an

employee elected to take early retirement in reliance on his employer's representation that he

would receive a specific monthly benefit. Such reliance proved to be misplaced, and, as in the

case at bar, the employee (and his spouse) sued for misrepresentation. Id. Once again, the First

Circuit held that ERISA preempted the plaintiffs' state law claims. The Court began by

recognizing that "ERISA's deliberately expansive preemption language was designed to

establish pension plan regulation as exclusively a federal concern." Carlo, 49 F.3d at 794

(quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987) (internal quotation marks

omitted)).  The Court then reasoned that the plaintiffs' misrepresentation claims must be

considered preempted by ERISA, because they have a clear connection to a qualified employee

benefit plan:

> If the [plaintiffs] were successful in their suit, the damages would
> consist in part of the extra pension benefits which [the defendant]
> allegedly promised him.  To compute these damages would require
> the court to refer to the [Early Retirement Plan (ERP)] as well as
> the misrepresentations allegedly made by [defendant].  Thus, part
> of the damages to which the [plaintiffs] claim entitlement
> ultimately depends on an analysis of the ERP.  To disregard this as
> a measurement of their damages would force the court to speculate
> on the amount of damages.  Consequently, because the "court's
> inquiry must be directed to the plan," the [plaintiffs'] claims are
> preempted under the first test set forth in *Ingersoll-Rand.*

Carlo, 49 F.3d at 794.

Carlo is squarely on point with the instant case, thereby dictating the ERISA-preemption

of Plaintiff's state law claim.  As in Carlo, the misrepresentation claim set forth in the Complaint

depends for its viability both on proof that Loomis LP implemented enhanced benefits under its

retirement plan, and on evidence of the additional value that Plaintiff lost in reliance on the

Company's alleged misstatements.  As the Court rightly recognized in Carlo, these inquiries are,

on their face, directed to an ERISA-governed plan.  Plaintiff's claim, therefore, is preempted.

See also Degnan v. Publicker Indus., Inc., 83 F.3d 27, 28-29 (1st Cir. 1996) (holding ERISA

preempted common law misrepresentation claim where plaintiff alleged that employer induced

him to take early retirement by representing, contrary to fact, that he would be eligible for certain

future pension benefits); Stanford v. AT & T Corp., 927 F. Supp. 524, 526-27 (D. Mass. 1996)

(holding plaintiff's common law misrepresentation claim regarding employee benefit plan

preempted by ERISA); Toomey v. Jones, 855 F. Supp. 19, 26-27  (D. Mass. 1994) (finding

misrepresentation and breach of contract claims preempted by ERISA because ERISA plan was "inextricably implicated" in those claims).

Vartanian and Carlo are in accord with the overwhelming weight of federal decisions holding that claims of misrepresentation regarding the content and timing of employee benefit plans are preempted by ERISA. See, e.g., Franklin v. QHG of Gadsden, Inc., 127 F.3d 1024, 1028-29 (11th Cir. 1997) (fraud and misrepresentation claims preempted by ERISA); Wilcott v. Matlack, Inc., 64 F.3d 1458, 1463-64 (10th Cir. 1995) (fraudulent and negligent misrepresentation claims preempted by ERISA); Smith v. Dunham-Bush, Inc., 959 F.2d 6, 8-10 (2d Cir. 1992) (negligent misrepresentation claim preempted by ERISA); Lister v. Stark, 890 F.2d 941, 944-46 (7th Cir. 1989) (fraud claim preempted by ERISA), cert. denied, 498 U.S. 1011 (1990); Straub v. W. Union Tel. Co., 851 F.2d 1262, 1263-64 (10th Cir. 1988) (claim of misrepresentation regarding increased pension benefits preempted by ERISA); Muse v. Int'l Bus. Machs. Corp., 103 F.3d 490, 493 (6th Cir. 1996) (concluding that ERISA preempts claim that plaintiffs "would have chosen to participate in the superior benefit plan had IBM not negligently or intentionally misrepresented to [them] that no further early retirement plans would be offered"), cert denied, 520 U.S. 1240 (1997); Lee v. E.I. DuPont de Nemours & Co., 894 F.2d 755, 756-57 (5th Cir. 1990) (holding state law claim for misrepresentation preempted by ERISA); Farr v. United States W. Communications, Inc., 151 F.3d 908, 913 (9th Cir. 1998) (finding state law claims for fraudulent and negligent misrepresentation regarding tax consequences of lump sum distribution under early retirement plan preempted by ERISA), amended on other grounds, 179 F.3d 1252 (9th Cir. 1999); Griggs v. E.I. Dupont de Nemours & Co., 237 F.3d 371, 379 (4th Cir. 2001) (holding state law claim for negligent misrepresentation preempted by ERISA).

In light of this controlling federal authority, there can be no doubt that Plaintiff's common law misrepresentation claim, based on alleged statements regarding the future availability of benefits under an enhanced retirement plan, is preempted by ERISA. The claim, therefore, must be dismissed.[10]

## V. TO THE EXTENT THAT COUNT III OF THE COMPLAINT SEEKS TO RECOVER BENEFITS UNDER ERISA SECTION 502(a)(1)(B), IT MUST BE DISMISSED FOR FAILURE TO STATE A VIABLE CLAIM.

To the extent that Plaintiff's common law claim for misrepresentation is actually a claim to recover benefits under Section 502(a)(1)(B) of ERISA,[11] the claim must be dismissed for each of two independently sufficient reasons. First, the Complaint itself makes clear that Plaintiff is not now (and never has been) due any benefits under the Pension Plan. Second, Plaintiff has failed to properly exhaust the Pension Plan's prescribed administrative remedies, a prerequisite to any legal action for benefits under Section 502(a)(1) of ERISA. For each of these reasons, the

---

[10] Plaintiff cannot rely on the Massachusetts SJC's decision in Pace v. Signal Technology Corp., 417 Mass. 154 (1994), to rescue his state law claim from federal preemption. In Pace, the SJC found that the plaintiff's common law misrepresentation claim was not preempted by ERISA. Id. at 160. In so doing, however, the court itself acknowledged that the U.S. Supreme Court would ultimately settle the issue of whether ERISA preempts state law claims arising from an employer's alleged misrepresentation about a pension or welfare benefit. See Pace, 417 Mass. at 158. It is, of course, well established that the scope of ERISA preemption is an issue of federal law. See Ingersoll Rand Co. v. McClendon, 498 U.S. 133, 137-39 (1990). As discussed above, there is ample federal authority in this circuit, directly on point, that controls the resolution of the preemption issue in the present case. See Carlo, 49 F.3d at 793-94 & n.2 (holding that plaintiff's benefits-related misrepresentation claim was preempted by ERISA, and explicitly rejecting Pace: "Of course, Pace, as a state court decision, is not controlling precedent on this issue"); Paradise v. Benefit Plans Comm., 1995 WL 708659, at * 3 & n.2 (D. Mass. Nov. 29, 1995) (finding state law tort claims preempted, and holding that Pace "is not controlling precedent on this federal issue").

[11] Plaintiff's Complaint could be construed as asserting a claim to recover benefits under the Pension Plan pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Specifically, the Complaint states that it is "a cause of action pursuant to ERISA to recover definite and ascertainable amounts under the terms of the Defendant [Pension] Plan ...." (Compl. ¶ 10) (emphasis added).

Complaint fails to state a viable claim for benefits under ERISA and must therefore be dismissed.

A.    **Plaintiff Was Not Eligible To Participate In The Enhanced Pension Plan, And Is Therefore Not Due Any Benefits Thereunder.**

In the Complaint, Plaintiff asserts that he seeks to "recover definite and ascertainable amounts under the terms of the [Pension] Plan [and] to enforce the Plaintiff's rights under the terms of the [Pension] Plan." (Compl. ¶ 10.)  Section 502(a)(1)(B) of ERISA's civil enforcement scheme creates a right of action "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  By the statute's plain terms, pleading an entitlement to benefits is essential to a viable claim.

In the case at bar, any claim by Plaintiff under the above provision of ERISA must fail. By his own admission, Plaintiff is not now (and never has been) due any benefits or entitled to any rights under the enhanced retirement plan offered by Loomis LP in July, 2002. (Compl. ¶¶ 25, 29-30.)  Plaintiff's entire theory of the case is premised on the charge that his misrepresentation-induced resignation <u>prevented</u> him from qualifying for enhanced benefits under the Pension Plan, as a result of which he sustained financial losses.  (Compl. ¶¶ 29-33.) <u>See</u> <u>Watson</u> v. <u>Deaconess Waltham Hosp.</u>, 298 F.3d 102, 104-05 (1st Cir. 2002) (observing that plaintiff could not have brought a Section 502(a)(1)(B) claim for benefits under defendant's long-term disability plan, on account of the "obvious problem" that he was not due benefits because he never met the plan's eligibility requirements).

In light of the undisputed fact that Plaintiff is not entitled to any rights or benefits under Loomis LP's enhanced retirement plan, the Complaint does not state a viable cause of action under Section 502(a)(1)(B) of ERISA.  The claim must, therefore, be dismissed.

**B.    Plaintiff Has Failed To Properly Exhaust The Pension Plan's Prescribed Administrative Remedies.**

It is well settled that, prior to asserting a claim in court for denial of benefits under an ERISA plan, a litigant must first exhaust the plan's internal remedies. See Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir. 1998) ("a prerequisite to obtaining judicial review under § 1132(a)(1)(B) is that the claimant have exhausted the internal administrative remedies available to him") (citing Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821 (1st Cir. 1988)); see also Fallick v. Nationwide Mutual Ins. Co., 162 F.3d 410, 418 n.4 (6th Cir. 1998) (noting that "due to ERISA's provision for the administrative review of benefits, ten federal circuits have read an exhaustion of administrative remedies requirement into the statute," and citing cases).

The Pension Plan, to which the enhanced retirement incentive is an amendment, sets forth comprehensive procedures pursuant to which a claimant may make a claim for benefits or challenge a denial of same. (See Exhibit 1 to the Complaint, at Section 10.11.) In his Complaint, Plaintiff alleges that he has exhausted all administrative remedies and Plan appeal procedures. (Compl. ¶ 34.) However, as Exhibit 3 to the Complaint makes altogether clear, Plaintiff did not properly exhaust the Pension Plan's administrative remedies.

The Pension Plan provides that a claim for benefits must be filed within 120 days of the date an individual receives notice that he or she is being denied benefits. (See Exhibit 1 to the Complaint, at Section 10.11(e).) Plaintiff was on notice as early as October, 2002 that he would not be receiving benefits under Loomis LP's enhanced retirement plan. By letter dated October 15, 2002, the Pension Committee notified Plaintiff of his accrued benefits, and this notice made

plain that Plaintiff would not be receiving benefits under Loomis LP's enhanced retirement plan. (See Exhibit 3 to the Complaint, at page 4.)[12]

Accordingly, under the terms of the Pension Plan, Plaintiff should have filed a claim for benefits with the Pension Committee on or before February 15, 2003 – within 120 days of October 15, 2002. However, it is undisputed that Plaintiff did not file for such benefits until on or about June 30, 2004 (see Exhibit 3 to the Complaint), more than a full year after the time period for filing such benefits had expired. As a matter of law, Plaintiff's failure to file for benefits internally within the time period provided for in the Pension Plan constitutes a failure to properly exhaust his administrative remedies. See Terry, 145 F.3d at 40 (in dismissing plaintiff's claim for benefits under ERISA Section 502(a)(1)(B) for failure to exhaust administrative remedies, the Court stated, "We have not yet had the opportunity to apply the Drinkwater exhaustion requirement to the situation here, where a claimant files an appeal, but does so late. In such a circumstance the claimant, while ostensibly availing himself of the internal review process, has procedurally defaulted as a result of the late filing. The same principles which inform the ERISA exhaustion requirement also counsel that part of that internal administrative process includes the responsibility on the claimant's part to file appeals in a timely fashion.") (emphasis added).

Accordingly, Plaintiff's claim for benefits under ERISA Section 502(a)(1)(B) is procedurally defective. The claim must, therefore, be dismissed.

---

[12] If Plaintiff did not receive the Pension Committee's October 15, 2002 letter, it is nonetheless undisputed that Plaintiff knew, at least by the time that he filed his initial complaint in the Original Action, on or about November 11, 2002, that he had been denied benefits under Loomis LP's enhanced retirement plan. (See Exhibit A.) Therefore, Plaintiff should have filed for such benefits within 120 days of the November 11, 2002 date. He did not do so. Instead, he waited until June 30, 2004 – more than a year after the 120-day time period to file had expired – to pursue such benefits. See Exhibit 3 to the Complaint.

## CONCLUSION

For all of the foregoing reasons, Plaintiff has failed to state claims upon which relief can

be granted, and this Court should dismiss the Complaint in its entirety.

**LOOMIS, SAYLES & COMPANY, INC.,**
**LOOMIS, SAYLES & COMPANY, LP,**
**LOOMIS, SAYLES & COMPANY, LP**
**PENSION COMMITTEE, LOOMIS-SAYLES**
**FUNDED PENSION PLAN, and KEVIN P.**
**CHARLESTON**

By their attorneys,

Robert B. Gordon, BBO # 549258
M. Concetta Burton, BBO # 643205
ROPES & GRAY
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Dated: November 24, 2004

<u>Certificate of Service</u>

I hereby certify that on November 24, 2004, a true and correct copy of the foregoing document was served upon the attorney of record, Cynthia B. Hartman and Roderick O. Ott, Gordon, Mond & Ott, P.C., Gordon, Mond & Ott, P.C., One Batterymarch Park, Suite 310, Quincy, MA 02169 by first-class mail.

M. Concetta Burton, Esq.

9572466_4                    -28-