UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PHILIP R. MURRAY,
          Plaintiff

vs.                                    CIVIL ACTION NO.

LOOMIS SAYLES & COMPANY, INC.,         04-12171  NMG
LOOMIS SAYLES & COMPANY, LP,
LOOMIS SAYLES & COMPANY, LP
PENSION COMMITTEE, LOOMIS-
SAYLES FUNDED PENSION PLAN,
and KEVIN P. CHARLESTON,
          Defendants

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS COMPLAINT

The Plaintiff submits the following Memorandum of Law in support of his Opposition to the Defendant's Motion to Dismiss Complaint and Demand for Jury Trial.

### FACTS

The facts alleged in the Complaint, which, along with reasonable inferences therefrom, must be taken as true for the purpose of this motion, are as follows.

The Plaintiff was employed by the Defendant Loomis, Sayles LP ("Loomis") beginning in September, 1935. In 2002, the Plaintiff began hearing that Loomis intended to restructure or reduce its work force, and would be offering a benefits package as an incentive for employees to take early retirement. Over a period of several months, the Plaintiff had several conversations with Kevin Charleston, Loomis' Chief Financial Officer ("Charleston"), about this

1

plan.   Charleston promised to keep the Plaintiff informed of
any developments.

On or about May 29, 2002, the Plaintiff specifically
informed Charleston that he was considering retiring from
Loomis to accept a position at another company, and that his
decision, and particularly its timing, was dependent on
whether Loomis would be offering an early retirement
incentive package.  Charleston represented that there was
such a package being worked on but not specifically planned,
but he would do everything possible to make sure the
Plaintiff qualified for any package that would be offered.

The Plaintiff deliberately delayed his resignation date
in order to qualify for the package he thought would be
coming.  However, at the end of June, 2002, Charleston
informed the Plaintiff that no incentive package was yet
being offered, or would be in the foreseeable future.   The
Plaintiff therefore accepted the offer from the other
company and resigned his employment with Loomis as of July
5, 2002.

The Plaintiff later learned that Loomis in fact offered
an early retirement incentive package to employees with a
qualification date of July 15, 2002, just ten days after the
effective date of the Plaintiff's resignation.  In part, the
package was offered in the form of a Second Amendment to the
Loomis Sayles Funded Pension Plan, adding an Article to the
Plan entitled Enhanced Retirement Benefits.  The Plaintiff

2

contends that this amendment could not possibly been planned, drafted and implemented in the ten days between his resignation and its effective date. Loomis was in fact planning this package much earlier, including during the time when the Plaintiff was being told that no such plan was contemplated within the foreseeable future.

The incentive package consisted of the addition of five years of service to the departing employee's pension calculation, resulting in a higher pension; health benefits; and a lump sum payment equal to one week of compensation for each year of service plus any retention bonus awards scheduled for October, 2002 and subsequent years. The lump sum payment was not included as part of the Pension Plan, but was made separately, concurrent with an employee's resignation.

Charleston had also told the Plaintiff that he would have to take the value of any unused vacation time as a lump sum payment, and would not be allowed to use it to extend his effective resignation date in order to qualify for the retirement incentive package. However, the Plaintiff later learned that at least one other employee was allowed to do just that.

If the Plaintiff had been informed of the early retirement incentive package being offered, he would, and could, have delayed his resignation from Loomis until after the date of qualification. He also would have used his

3

vacation time to extend his employment term to qualify for
the package if he had been allowed to do so.  He would
therefore have been eligible for the full benefits under the
retirement incentive package, including the lump sum payment
and the extra years of service added to his pension
calculation.

## PROCEDURAL BACKGROUND

In November, 2002, the Plaintiff filed an action for
misrepresentation against Loomis and Charleston in Norfolk
County Superior Court.  (This Complaint is attached to the
Defendants' Motion as Exhibit A.)  The Plaintiff claimed
that the Defendants had knowingly and falsely represented to
him that there was no retirement package being offered
within a foreseeable timeframe, and that he had relied about
that representation to his detriment.

The Defendants initially served a Motion to Dismiss
that Complaint, but then removed it to the U.S. District
Court before the motion could be opposed and filed (Civil
Action No. 02-12456 RCL).  They claimed in the Removal that
the Plaintiff's claim was preempted by ERISA, 29 U.S.C. §
1001 et. seq., and therefore that the U.S. District Court
had original jurisdiction.  Almost immediately, the
Defendants also filed a Motion to Dismiss, alleging that the
misrepresentation claim was preempted by ERISA, and that the
Plaintiff had failed to state a claim thereunder for three
reasons: (1) he was not entitled to, and had not claimed,

4

any benefits under the Plan; (2) his voluntary resignation
precluded any claim; and (3) he could not recover
individually for a breach of fiduciary duty. See Exhibit 1
attached hereto.

The Plaintiff filed a Motion to Remand the case to
Superior Court, alleging that the District Court did not
have complete, exclusive jurisdiction over the claim.  The
Plaintiff also opposed the Motion to Dismiss because of the
Motion to Remand and also on its substance. See Exhibit 2
attached hereto.

The Court allowed the Motion to Dismiss "on the ground
that the plaintiff's claim as stated in the complaint is
preempted by ERISA," and went on to allow the Plaintiff to
"amend if he can assert a claim under ERISA." See Exhibit B
attached to the Defendants' Motion. The Court never issued
a ruling on the Plaintiff's Motion to Remand.

The Plaintiff filed an Amended Complaint, which is
attached to the Defendants' instant motion as Exhibit C.
The Defendants then filed a new Motion to Dismiss, attached
hereto as Exhibit 3 (without exhibits), containing three
basic arguments: (1) that the Plaintiff was not eligible to
participate in the enhanced benefit plan; (2) that the
Plaintiff had not exhausted administrative remedies under
the Plan; and (3) that the Plaintiff had named the wrong
parties.

The Court allowed this Motion to Dismiss "for the reasons stated in Part II of the Defendants' memorandum"; in other words, because the Plaintiff had not exhausted his administrative remedies. See Exhibit 4. The judgment of dismissal attached to the Defendants' Memorandum as Exhibit D was entered as a result of this ruling.

The Court did not address, or rule upon, the Defendants' argument that the Plaintiff was not entitled to benefits under the Plan. The only reason for the dismissal was the procedural defect of the Plaintiff's failure to exhaust administrative remedies.

## ADMINISTRATIVE REMEDIES

The Plaintiff then proceeded to make an administrative claim in accordance with the Plan. He first wrote to Loomis requesting a determination of his plan benefits, which was provided on March 23, 2004. See Exhibit 5. He then sent a written request for the enhanced benefits to the administrator of the Pension Plan, which was denied as untimely and because, the administrator stated, "a court of competent jurisdiction concluded that you were not entitled to these benefits." See Exhibit 6. The Plaintiff then sent a request for a review of this decision by the Pension Committee; this was again denied as being untimely. See Exhibit 7.

The Plaintiff then filed the instant Complaint, alleging that the Defendants violated § 404 of ERISA by

6

making misrepresentations to the Plaintiff, and § 510 of
ERISA by discriminating against the Plaintiff.   The
Complaint also contains a common law misrepresentation
claim.

### ARGUMENT

In general, the standard the Defendants must meet in
order to prevail on their Motion to Dismiss is a high one.
A Complaint will survive such a motion as long as it pleads
sufficient facts to warrant recovery on any cognizable
theory of the case. See <u>Tompkins v. United Healthcare of New
England, Inc.</u>, 203 F.3d 90 (1st Cir. 2000).   The Plaintiff
need only set forth factual allegations, either direct or
inferential, respecting each material element necessary to
sustain recovery under some actionable legal theory.   The
Plaintiff is entitled to the benefit of all reasonable
inferences, and all pleaded facts must be accepted as true.
See <u>Cooperman v. Individual, Inc.</u>, 171 F.3d 43 (1st Cir.
1999).   The Court's task is ruling upon a motion to dismiss
is not to decide where the plaintiff ultimately will
prevail, but rather, whether he is entitled to undertake
discovery in furtherance of the pleaded claim.   <u>Rodi v.
Southern New England School Of Law</u>, 389 F.3d 5 (1st Cir.
2004).

In the instant case, the Defendants have not shown that
the Plaintiff has failed to plead sufficient facts to
survive their Motion.

I.    THE DOCTRINE OF RES JUDICATA DOES NOT BAR THE
      COMPLAINT BECAUSE THE ISSUES HAVE NOT YET BEEN
      DECIDED

The Defendants go into great detail in their Motion
regarding the principals of res judicata and the fact that
the instant Complaint is similar to the Plaintiff's previous
complaint.  Significantly, the Defendants ignore the Court's
reasons for the earlier dismissal of the Plaintiff's claims.
However, the Defendants' failure to acknowledge it does not
change the fact that the issues raised in the instant
Complaint have never been <u>actually decided</u> by any Court.
Rather, the previous complaint was dismissed strictly on
procedural grounds.

Only issues that have been actually litigated and
determined by a judgment, and that were essential to that
judgment, are precluded in subsequent actions.  See, e.g.,
<u>In re Kane</u>, 254 F.3d 325 (1st Cir. 2001), citing Restatement
(Second) of Judgments, § 27(for a matter to have been
'actually litigated and determined' by prior judgment that
is to be given issue preclusive effect, there must have been
something more than a mere resolution of issue as result of
some determinative legal doctrine that short-circuits the
merits).  See also <u>Hoult v. Hoult</u>, 157 F.3d 29 (1st Cir.
1998; <u>Gilday v. Dubois</u>, 124 F.3d 277 (1st Cir. 1997); <u>Grella
v. Salem Five Cent Sav. Bank</u>, 42 F.3d 26 (1st Cir. 1994).
Moreover, if it is impossible to determine whether a
particular issue was in fact resolved in a party's favor,

"preclusive effect must be denied." <u>U.S. v. Aguilar-Aranceta</u>, 957 F.2d 18, 21 (1st Cir. 1992).

It is very clear from the ruling allowing the Defendants' motion to dismiss the earlier case that the <u>only</u> reason was the Plaintiff's failure to exhaust administrative remedies.  See Exhibit 4.  Thus, the dismissal was based strictly on the procedural ground that the Plaintiff had not satisfied a condition precedent to bringing suit.  There is no indication that the Court even considered, let alone ruled upon, the substantive issues regarding ERISA that had been raised by the Defendants.  Now that the Plaintiff has gone through the administrative procedure, he is entitled to litigate the substance of his claim.

## II.  THE DEFENDANTS HAVE NOT SHOWN THAT THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY

The Defendants' argument here is based entirely upon the Plaintiff's failure to request equitable relief, as opposed to money damages, in his breach of fiduciary duty claim.  Regardless of the language used, the Plaintiff's claim is clear.  However, the Plaintiff has already filed an amended complaint addressing this issue, which is allowed as a matter of right pursuant to Fed.R.Civ.P. 15(a), as no responsive pleading has yet been filed.  See <u>McDonald v. Hall</u>, 579 F.2d 120 (1st Cir. 1978)(for purposes of rule entitling party to file amended pleading once prior to adverse party's serving responsive pleading, neither motion

to dismiss nor one for summary judgment is a "responsive pleading.")

Therefore, since the Plaintiff is now specifically requesting equitable relief, the Defendants' argument is moot.

## III. THE DEFENDANTS HAVE NOT SHOWN THAT THE PLAINTIFF'S RESIGNATION PRECLUDES RECOVERY AS A MATTER OF LAW

The Defendants' argument here is based upon a reading of the Complaint that is clearly erroneous. The Plaintiff is not claiming that he was discharged by the Defendants in order to prevent him qualifying for the enhanced benefits package. Rather, he alleges that the misrepresentations made to him caused him to resign earlier than he otherwise would have, and that he was therefore deprived of the opportunity to qualify for the package. The wrongful conduct is not the discharge, but the misrepresentations. The Plaintiff further claims that he was discriminated against because other employees were treated differently, specifically by being allowed to utilize unused vacation time to extend an employment term in order to qualify, while the Plaintiff was not allowed to do so.

The First Circuit has held that such a claim is permissible. For example, in <u>Vartanian v Monsanto Co.</u>, 14 F3d 697 (1st Cir. 1994), a former participant in a retirement plan was found to have standing to sue where he retired early, and took a lump sum payment of his pension, in reliance upon his supervisor's denial that the employer

had any plans for an early retirement offering. Two months later, the employer did offer an enhanced retirement plan as an incentive for early retirement. The former participant sued for breach of fiduciary duty under ERISA. The Court ruled that, even though the plaintiff was no longer a participant in the plan, he had standing to sue, since to hold otherwise would imply that when an employer breaches its fiduciary duty to an employee under ERISA, the employee would have standing only if he found out all of the facts constituting the breach prior to his receipt of retirement benefits. Such a holding would enable an employer to defeat the purpose of ERISA merely by keeping his breach a secret until the employee receives his benefits, or by distributing a lump sum and terminating benefits before the employee can file suit. Id. at 702.

The instant case is very similar to Vartanian, in that the Plaintiff claims that but for the misrepresentations made to him, he would not have resigned when he did, and thus he would have qualified for the enhanced benefits package. The Defendants' conduct resulted in, and the Plaintiff alleges was for the purpose of, preventing him from qualifying for the package. The discrimination portion of the Plaintiff's claim also has nothing to do with the fact that he left employment, but rather with the fact at that at least one other person was notified of the incentive

11

package and allowed to artificially extend his or her
employment term to qualify, but the Plaintiff was not.

See also Saporito et al v. Combustion Engineering,
Inc., 843 F.2d 666 (3rd Cir. 1988)(holding that to require
that employees have the status of participant in order to
bring a suit under ERISA s. 510 would undercut the
usefulness of the statute, since by its very nature, s. 510
will often involve employees who claim that they did not
receive benefits because of the employer's actions and thus
were denied an opportunity to become participants); Healy v.
Axelrod Const. Co. Defined Ben. Pension Plan and Trust, 787
F.Supp. 838 (N.D. Ill. 1992)(retiree stated discrimination
claim under ERISA in alleging that he was fraudulently
induced to execute waiver to prevent him from obtaining
benefits under pension plan).

## IV.  THE DEFENDANTS HAVE NOT SHOWN THAT THE PLAINTIFF'S MISREPRESENTATION CLAIM IS PREEMPTED BY ERISA

As the Plaintiff's complaint makes clear (Paragraph
32), the retirement incentive package offered by the
Defendants is multi-part. One part comprises the added
years of service, resulting in an increased pension benefit;
this took the form of an Amendment to the Pension Plan, and,
the Plaintiff acknowledges, is covered by ERISA. However,
the other part is a current lump sum payment consisting of
one week's compensation for each year of service, plus
retention bonuses. This payment has nothing to do with the

12

pension and was not incorporated into the Amendment to the Plan.

It is true, as stated by the Defendants, that ERISA "was designed to establish pension plan regulation as exclusively a federal concern." Carlo v. Reed Rolled Thread Die Co., F.3d 790,792 (1st Cir. 1995). That case, and all of the other cases relied upon by the Defendants, involved employees who alleged misrepresentations by the respective employers regarding pension benefits. However, there is no indication in any of those cases that they also involved current lump sum incentive payments, which is the case here.

Therefore, as this portion of the Plaintiff's claim is not governed by ERISA, his claim for misrepresentation, as regards the lump sum payment, must stand.

V.   THE DEFENDANTS HAVE NOT SHOWN THAT THE PLAINTIFF
     FAILS TO STATE A VIABLE CLAIM UNDER ERISA
     § 501(a)(1)(B)

     A.   The Defendants have not shown that the
          Plaintiff's ineligibility to participate
          precludes his claim.

As discussed in Section III above, where the alleged misconduct of an employer is what prevented an employee from becoming eligible for a benefit, the employee has a claim even though he may not be a participant. Vartanian, supra. In the instant case, the Plaintiff claims that he would be eligible but for the Defendant's misrepresentations and breach of fiduciary duty. He is therefore entitled to

13

maintain an action pursuant to ERISA § 502(a)(1)(B) to enforce or determine his right to future benefits.

Watson v. Deaconess Waltham Hospital, 298 F.3d 102, cited by the Defendants, is distinguishable from the instant case.  That case involved a simple failure by the defendant employer to communicate to the plaintiff employee that switching to part-time employment would mean he would no longer qualify for long-term disability benefits.  The employee did not allege any deliberate omission with the intent to deprive the employee of benefits, or even that the employee had asked the employer about the benefits.

Those circumstances are very different from the instant case, where the Plaintiff alleges that the Defendants knew he was delaying his resignation in case he could qualify for the early retirement package, was relying upon information he received from the Defendants, and was induced to resign at a certain time by the misrepresentations regarding the status of the package.  He is therefore entitled to maintain an action pursuant to §502(a)(1)(B) to enforce or determine his right to future benefits.

> **B.   The Defendants have not shown that the Plaintiff's claim is precluded by a failure to exhaust administrative remedies.**
>
> > **1.   The Plaintiff did in fact exhaust administrative remedies**

As noted in the Background section above, the Plaintiff's initial Complaint was specifically dismissed in response to Section II of the Defendants' Motion to Dismiss,

which simply stated that "[p]laintiff has alleged no facts to suggest that he availed himself of these procedures, and the evidence is indeed undisputed that he did not exhaust them. Accordingly, Plaintiff's claim for benefits under ERISA Section 502(a)(1)(B) is procedurally defective and must be dismissed." See Exhibit 3, pp. 6-7. The Court allowed the motion "for the reasons stated in Part II", but did not specify that the dismissal was with prejudice (nor did the Defendants act for that). The Plaintiff was then free to correct this procedural defect in his complaint, which he proceeded to do. The instant Complaint does not contain this defect, as the Plaintiff has alleged exhaustion of the administrative remedies. More than that, he has actually exhausted them.

The Defendants argue that the Plaintiff's request for administrative review was untimely because the Plan requires such a request to be made within 120 days after the receipt of notice of the denial of benefits. However, pursuant to the Plan's Section 10.11(e)(see Exhibit A to the Complaint, p. 56), a claimant may file a claim within 120 days "after the applicable Notice Date." The term "Notice Date" is defined in four ways, and the applicable definition here is subsection (iv): "In any case where the Committee provides an individual, in connection with a distributable event under the Plan, a written statement of his or her vested

15

Accrued Benefit... the Notice Date shall be the latest date of the Participant's receipt of such notice."

As the Complaint states, the Plaintiff received a written statement of his vested benefits on March 26, 2004. The fact that the Defendants chose to re-send a statement from October, 2002 rather than draft a new one does not change this date of receipt. The Plaintiff made a timely administrative claim for the enhanced benefit within 120 days of his receipt of the statement. The Defendants' response, from Robert Ix, Chair of the Pension Committee, was that the request was untimely and, wrongly, that the dismissal of the earlier complaint meant that "a court of competent jurisdiction concluded that you were not entitled to these benefits." See Exhibit 6. Pursuant to the procedure outlined in the Plan, the Plaintiff then requested a review by the Pension Committee. Mr. Ix again responded, stating that the Committee would not review the untimely request. See Exhibit 7. The Plaintiff is therefore left with no option but to bring this lawsuit.

2. **The Defendants have not shown that exhaustion of administrative procedure is required.**

While it is true that the general principle outlined in Terry v. Bayer Corp., 145 F.3d 28 (1st Cor. 1998) is that administrative remedies must be exhausted, there are exceptions that apply to the instant case. Although this goes beyond the scope of the Complaint (and is therefore not

16

an appropriate subject for a motion to dismiss), the Plaintiff alleges that he was not informed of the Plan's administrative procedures until more than 120 days after receiving the October, 2002 determination letter. He did not receive a copy of the Plan itself from the Defendants while he was employed there, and the October, 2002 letter that purported to describe his pension benefits did not include the claims procedure. See Exhibit 8.

Where an employee has not been informed of the administrative procedure, it does not need to be exhausted before commencing suit. See, e.g., Hall v. National Gypsum Co., 105 F.3d 225 (5th Cir. 1997); Swaback v. American Information Technologies Corp., 103 F.3d 535 (7th Cir. 1996); Epright v. Environmental Resources Mgt., Inc., 81 F.3d 335 (3d Cir. 1996); Vanderklok v. Provident Life Ins. Co., 956 F.2d 610 (6th Cir. 1992); Gross-Mueller v. International Union, United Auto, Aero, 715 F.2d 853 (3d Cir. 1983).

## CONCLUSION

For all the foregoing reasons, the Defendants have not shown that the Plaintiff has failed to state a claim upon which relief can be granted. The Plaintiff therefore requests that the Court deny the Motion to Dismiss.

DATED: December 21, 2004          Respectfully submitted,
                                  PHILIP MURRAY,
                                  By his attorney,


                                  Cynthia B. Hartman
                                     BBO No. 559486
                                  Roderick O. Ott
                                     BBO No. 380935
                                  Gordon, Mond & Ott, P.C.
                                  One Batterymarch Park
                                  Suite 310
                                  Quincy, MA 02169
                                  617-786-0800

                    CERTIFICATE OF SERVICE

    I hereby certify that I have served the above document
upon all parties by mailing a true and complete copy thereof
to counsel of record this 21st day of December, 2004.


                                  Cynthia B. Hartman

18